IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-CR-638 |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| MURRAY FOSTER, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This matter is before the Court upon Defendant Murray Foster's ("Defendant") Motion to Revoke Detention Order filed on February 6, 2024 ("Defendant's Motion"). (Doc. No. 22.) On February 6, 2024, the United States of America filed the Government's Response in Opposition to Defendant's Motion ("the Government's Response"). (Doc. No. 25.) Although given until February 13, 2024 to file a reply in support of Defendant's Motion, Defendant did not do so. Accordingly, Defendant's Motion is ripe for a decision.

**Background**

On August 1, 2023, a Criminal Complaint was filed against Defendant alleging that Defendant committed the offense of Distribution of a Controlled Substance, and Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(B) and (b)(1)(C). (Doc. No. 1.) Attached to the Complaint was an Affidavit detailing the investigation and surveillance of Defendant's property at 3326 E. 125th Street, and residence that he shared with his wife and 4 children at 16903 Walden Avenue, both in Cleveland, Ohio, that led to the issuance of residential search warrants that were executed at these two locations.

As relates to Defendant Foster, surveillance of the 3326 E. 125th Street property demonstrated the following. The north side door of the E. 125th Street downstairs property is the door from which Foster had been seen conducting suspected drug sales. Defendant owns the building, and was seen interacting with his co-defendant, Thompson, throughout the investigation. Thompson had also been followed, on several occasions, to Defendant's residence on Walden Avenue. Detectives located the vehicles Defendant had been observed operating at his Walden Avenue residence in the early morning hours. The E. 125th Street address had never had the trash out for collection throughout the investigation. (Doc. No. 1-1, PageID # 53.) Detectives witnessed Foster at the E. 125th Street property conduct what they described as "dead-drops" by leaving items at locations for customers to retrieve, i.e., the porch at E. 125th Street or yellow box truck parked in the field to the north of the property, to avoid direct meetings. (*Id.*, PageID #s 55-57) Detectives also witnessed Foster conduct suspected hand-to-hand drug transactions. (*Id.*, PageID #s 57, 58.)

During the execution of the search warrant at the E. 125th Street property, investigators found Defendant, and located the following items: approximately 100 grams of suspected fentanyl located in a drawer in the 2nd living room; approximately 28 grams of crack cocaine located in a draw in the 2nd living room; a blender and strainer with residue located in the kitchen cabinet; a mixer located in a kitchen cabinet; a toothbrush and plate with residue located in a kitchen cabinet; a glass measuring bowl and knife with residue located in a kitchen cabinet; miscellaneous packaging with residue located in a kitchen cabinet; green packaging with an unknown substance located in a kitchen cabinet; a cellphone located on Defendant's person; a 12 gauge shotgun shells and miscellaneous paperwork located in the 2nd living room in a drawer; a large press located in the 2nd living room in a drawer; approximately 2 to 3 kilograms of suspected fentanyl and cocaine located in the basement in a duffel

bag; approximately 5 oounds of suspected methamphetamine located in the basement in a duffel bag; approximately 500 suspected fentanyl pills located in the basement in a duffel bag; and multiple bags of common cutting agents including "Rizzo" and Dormin located in the basement in a duffel bag. (Doc. No. 1-1, PageID #s 62-63.

At the Walden Avenue residence, Defendant's four children were present during the search, and investigators found the following items: magnetic, concealable container for a vehicle, paperwork, hard drive, and miscellaneous ammunition located in the upstairs master bedroom; $7,445 located in a safe in the upstairs master bedroom; an unloaded (ammunition ready-at-hand) American Tactical .223/5.56 caliber rifle located in the upstairs master bedroom; a loaded Ruger, .22 caliber handgun located in the upstairs master bedroom; a loaded Taurus, .380 caliber handgun located in the upstairs master bedroom; a loaded Smith & Wesson, .40 caliber handgun located in the upstairs master bedroom; a loaded Ruger, .380 caliber handgun located in the upstairs master bedroom; a loaded Kahr Arms, .40 caliber handgun located in the upstairs master bedroom; an unloaded (ammunition present at the E. 12th Street residence) Mossberg, 12 gauge shotgun located in the upstairs master bedroom; a magazine, scale, blender top with residue, suspected cutting agents, and paraphernalia located in the kitchen; paperwork and a DVR located in the living room; and a motorcycle bearing Ohio registration FNW78 (registered to Defendant) located in the garage. (*Id.*, PageID #s 63-64.)

Also, surveillance conducted at the Walden Avenue residence of Defendant showed a female leave that residence shortly after the execution of the search warrant at the E. 125th Street property. She was later identified as a relative of Defendant's children's mother (now his wife). Upon being stopped, investigators found her to be in possession of approximately 50 grams of suspected drugs

(an unknown powder that was identical in color and texture as the suspected fentanyl located at the E. 125th Street address), and two firearms. (*Id.*, PageID # 61.)

Defendant was arrested on November 17, 2023, a Pretrial Services Report was completed on November 21, 2023, and Magistrate Judge Greenberg conducted a detention hearing on November 22, 2023. At the detention hearing, and in support of its position that Defendant should be detained, the Government proffered the Pretrial Services Report (doc. no. 7),[1] the Complaint Affidavit (doc. no. 1-1), the 17-page sealed investigation report, i.e., the police report, the inventories of three residences searched, to include the E. 125th Street residence where Defendant was located, and photographs taken at the Walden Street address showing guns, and cash, and photographs taken at the E. 125th Street addresses showing narcotics found there.

Counsel for Defendant asked Magistrate Judge Greenberg to adopt the findings and recommendation set forth in the Pretrial Services Report, and release Defendant on bond with conditions. He proffered letters of support from Defendant's wife, mother, and daughter, and his pastor who is also his uncle, and a fellow church member. (Doc. Nos. 6-1, PageID #s 73-77.)

Magistrate Judge Greenberg took the matter under advisement, and then on November 22, 2023, he issued a Detention Order Pending Trial, concluding that there was probable cause to believe that Defendant had committed an offense for which a maximum prison term of ten years or more is

---

[1] The Pretrial Services Report contains the following relevant information. Defendant reported his address as 16901 Walden, Ohio 44128 where he has lived for the past six years with his wife and four children although he did not marry his wife until September 2023. He reported that he is a life-long resident of the greater Cleveland area and maintains good relationships with his mother and two brothers all of whom also reside in the Cleveland area. Defendant reported that he has been self-employed for six years, he owns two rental properties, and has a moving and hauling business and a landscaping business, and that his income varies but he provided an estimate of his monthly income. According to Defendant, he graduated from high school and attended some college. According to the Pretrial Services Report, Defendant does not have a criminal history. Defendant reported that if released, he would return to the Walden Street residence to live with his wife and children.

4

prescribed, specifically 21 U.S.C. §§ 846, 841(a)(1), and that the Defendant had not rebutted the presumption established by that finding, i.e., that no condition will reasonably assure Defendant's appearance and the safety of the community. (Doc. No. 8, PageID # 84-85.) Magistrate Judge Greenberg found that the testimony and information submitted at the detention hearing established by clear and convincing evidence that:

> Based upon the nature and circumstances of the within case; the strength of the Government's case; the proffer of the Defendant's place in the drug operation; his ownership of an unoccupied building ostensibly used for drug trafficking; the evidence of drugs, paraphernalia, money, and firearms in and around his home, where he resides with his wife and four (4) minor children; the allegations of the quantity and dangerousness of the controlled substances allegedly sold by the Defendant; and the allegations of other family members' participation and being targets of other investigations; there is no condition or combination of conditions that will reasonably assure the safety of the community.

(*Id.*, PageID # 85.)

On December 6, 2023, a federal grand jury in the Northern District of Ohio returned a 5 count indictment against Defendant, charging him with: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846, in Count 1; Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), in Count 2; Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), in Count 3; Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), in Count 4; and Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), in Count 4.

**Parties' Arguments**

In support of Defendant's Motion, counsel for Defendant points to information included in the Pretrial Services Report and represents that Defendant's mother was present at the detention

hearing and is willing to accept custody and supervision of Defendant on home detention with electronic monitoring and is willing to report any violations to the Court and represents that there would be no firearms in her home. (Doc. No. 22, PageID # 189.) Defendant, through counsel, asserts that the Magistrate Judge never considered in his Order of Detention Pending Trial that Defendant presented evidence sufficient to rebut the presumption in favor of detention. (*Id.*) However, it is clear from a review of Magistrate Judge Greenberg's Order that he did. (Doc. No. 8, PageID #s 84-85.) Counsel for Defendant quotes from that part of Magistrate Judge Greenberg's Order stating Magistrate Judge Greenberg's conclusion that the testimony and information submitted at the detention hearing established by clear and convincing evidence that **there is no condition or combination of conditions that will reasonably assure the safety of the community**. (Emphasis added by bold print.) (*Id.*, PageID # 190.) But then, contrary to the very portion of the Order he quotes from, Defendant's counsel contends that the Order does not reflect any conclusion that no condition or combination of conditions will reasonably assure the safety of any other person or the community.

Defendant, through counsel, argues that evaluation of the 3142(g) factors demonstrates that Defendant does not represent a continuing danger to the community. As for the nature and circumstances of the offense, counsel asserts that the offenses with which Defendant is charged are not crimes of violence and do not involve a firearm; Defendant was cooperative when arrested and made no attempt to flee or hide; he was not found to be in physical possession of any firearms or controlled substances, he was not on probation, parole or other release at the time of the alleged offenses, he does not have a criminal history, and the majority of the drugs that were found were located in the basement of a home that Defendant was renovating.

As for the weight of the evidence against Defendant, counsel contends that there is absolutely no evidence that Defendant would present a danger to the community if he was released, representing that the drugs belonged to the co-defendant, and Defendant did not know that the co-defendant was stashing drugs in the home Defendant was renovating.

As for Defendant's history and characteristics, counsel submits that the exhibits proffered at the detention hearing demonstrate that Defendant is a lifelong member of the community, has family support, has a stable residence and employment, does not have a criminal history or a history of drug trafficking or mental health issues, owns a company, has four children, and attends church regularly.

As for the nature and seriousness of the danger to the community, counsel for Defendant asserts that Defendant's history and characteristics, including his conduct upon his arrest weigh against any current danger to the community, and demonstrate that he is not likely to engage in drug trafficking if he is released pending trial. And defense counsel argues that there are multiple conditions of release that would adequately protect against any risk that Defendant would engage in criminal conduct while on pretrial release.

According to the Government, there is a rebuttable presumption in favor of detention where there is probable cause to believe that the defendant committed a controlled substance offense for which the maximum term of imprisonment is 10 years or more, citing 18 U.S.C. § 3142(e)(3)(A); and that this presumption imposes a burden of production on the defendant to show that he does not pose a danger to the community or a risk of flight, but the government retains the burden of persuasion "'to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community,'" citing *United States v Stone*, 608 F.3d 939, 945, 946 (6th Cir. 2010).

The Government argues that Foster has failed to overcome the presumption in favor of detention with the information he proffered demonstrating family ties and lack of criminal history. The Government argues that the information proffered by Defendant does not rebut or overcome the risk of danger that Defendant poses to the community as a "sophisticated high level drug dealer who was found alone in possession with more than $100,000 worth of dangerous narcotics." (Doc. No. 23, PageID # 213.) According to the Government "there is no condition to stop someone so well established and dangerous from continuing his trade," and therefore, Defendant must remain in custody pending trial. (*Id.*)

The Government argues that even if the Court finds that Defendant did rebut the presumption of detention, nonetheless an analysis of the factors set forth in 18 U.S.C. § 3142(g) supports its argument that Defendant should be detained pending trial. As to the nature and circumstances of the offenses, the Government asserts that at the E. 125th Street address, officers saw Defendant execute "dead drops," i.e., a method where a drug trafficker hides narcotics in a location and leaves an area so as not to be see handing the narcotics to others and saw him execute hand to hand transactions outside of E. 125th Street, sometimes in the presence of his own wife. And, per the Government, the fact that guns, cash, and drug paraphernalia were found at the Walden residence, but the drugs were found only at the E. 125th Street property that Defendant owned, demonstrates Defendant to be a sophisticated drug trafficker, knowing to separate his narcotics and his cash in different residences and to establish a surveillance system to avoid drug related activities.

As to the weight of the evidence relating to dangerousness and risk of flight, the Government points to the fact that for the first time in his life, Defendant faces a significant penalty, with an estimated guidelines sentence of at least 188 to 235 months. The Government contends that

Defendant is an established drug supplier to his co-defendant Thompson and others, increasing the risk that if released he will continue to be a danger to the community.

As to Foster's history and characteristics, the Government notes that he is self-employed but the evidence, i.e., cash found at his Walden Street residence, demonstrates that his income is really earned through making and selling drugs, as were found in the E. 125th Street property. And according to the Government, one of the very family members that would provide him with support, i.e., his wife, was seen accompanying him to the East 125th Street residence, and his sister-in-law, was stopped while exiting the Walden Street residence with firearms and drugs.

**Discussion**

18 U.S.C. § 3145(b) provides:

> (b) If a person is ordered detained by a magistrate judge, *** the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

District courts exercise a *de novo* review of a magistrate judge's release or detention order. *United States v. Fitzhugh*, 2016 WL 4727480 (E.D. Mich. Sept. 12, 2016 (citations omitted); *United States v. Eckenrode*, 2013 WL 257052 (N.D.Ohio Jan. 23, 2013) ("A District Court reviews the release order of a Magistrate Judge *de novo*.")

Although Defendant's proffer of the information contained in the Pretrial Services Report and the letters of support, and assertion that he will live with his mother if released, may demonstrate that Defendant does not pose a risk of flight, this proffered information does not rebut the presumption that Defendant poses a danger to the community if released on bond.

Title 18 U.S.C. § 3142 "provides the framework for the district court's analysis as to whether release pending trial is proper." *United States v. Williams*, 2020 WL 2529356 (E.D. Tenn. May 18, 2020) (citing *United States v. Webb*, 238 F.3d 426, at *2 (6th Cir. 2000) (table opinion)). "The ultimate

9

touchstone of this analysis is 'whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community.' § 3142(g)." *Id.* Courts must consider the following: (1) the nature and circumstances of the offense charged, including whether it is a crime involving a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, e.g., his or her character, mental and physical condition, family and community ties, financial resources, criminal history, and substance-abuse history; and (4) the nature and seriousness of the danger posed to the community by the defendant's potential release. After consideration of these factors, as outlined below, the Court finds that there are no conditions of release that will reasonably assure the safety of any other person and the community.

As to the nature and circumstances of the offense charged, this Court finds that this factor weighs in favor of detention. Defendant is charged with drug trafficking offenses involving dangerous drugs and was seen conducting "dead drops" and suspected hand-to-hand transactions at the very property he owns, ostensibly for purposes of conducting his drug trafficking operation, and where the significant quantities of drugs were found. Indeed, he was seen interacting with his co-defendant Thompson at the E. 125th Street property, and co-defendant Thompson was seen at Defendant's Walden Ave. address. And, although he was not charged with any firearms offenses, the search of his home on Walden – where he resides with his wife and children – revealed numerous loaded firearms, cash and drug paraphernalia.

As to the weight of the evidence, this factor too, weighs in favor of detention. Defendant, through counsel, has represented that the drugs belonged to his co-defendant, and that Defendant did not know that co-defendant Thompson was stashing drugs in his home on E. 125th Street that he was renovating. However, the details set forth in the sworn Affidavit concerning the interactions of Foster and co-defendant Thompson, the dead-drops and hand-to-hand transactions detectives witnessed Foster conduct,

the fact that his wife's sister-in-law left his Walden residence with two firearms and suspected drugs similar to those found at the E. 125th Street property, belie this mere representation or assertion.

As to the Defendant's history and characteristics, the lack of a criminal history, his family ties – to include his wife and four children, mother, and two brothers, his ties to the community through his church, his lack of mental or physical health issues, and his employment ostensibly performing landscaping and moving and hauling services, serves to rebut the presumption that he is a flight risk and arguably weigh in favor of release with conditions, to include GPS location monitoring. However, while GPS location monitoring as a condition of a bond might provide some useful information about where Defendant is, it would provide little useful information about what he is doing, and the ready accessibility of smart phones and digital communication devices would make it all too easy for him to resume his alleged involvement in the trafficking of controlled substances without detection. Moreover, as Magistrate Judge Greenberg concluded, there are allegations of family members being the targets of other investigations, and the Affidavit makes clear that Defendant's wife's sister-in-law took firearms and suspected drugs from the Walden Avenue address after the search of the 125th Street property. And, obviously, Defendant's wife and minor children were living with him at the Walden Avenue residence, or the very home where Defendant kept loaded firearms and multiple items of drug paraphernalia. Such family ties or support are not the kind of family ties that demonstrate that Defendant is not a danger to the community and would not continue with his involvement in trafficking of controlled substances.

Finally, as to the nature and seriousness of the danger posed to the community by Defendant's release, the Court finds that this factor weighs in favor of detention. The quantity and dangerous nature of the drugs found at Foster's property at E. 125th Street, as well as the number of loaded

firearms located at his Walden Avenue residence that he shares with his wife and children, indicates to this Court that he would pose a danger to the community if he is released. And, as noted above, GPS monitoring could not guarantee that he would not continue to engage in the trafficking of controlled substances without detection.

Accordingly, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Date: February 15, 2024

    s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE